Steele v. Steele.*

(Division B. Nov. 5, 1928. Suggestion of Error Overruled Dec. 3, 1928.)

[118 So. 721. No. 27406.]

366

*Corpus Juris-Cyc References; Divorce, 19CJ, section 795, p. 343, n. 10; section 831, p. 367, n. 24; Judgments, 34CJ, section 1614, p. 1140, n. 60. On the rule that the question of jurisdiction of courts is always open to inquiry, see 15 R. C. L. 920; 4 R. C. L. Supp. 1023. As to power of court to deny custody of child to parent for its well-being, see annotation in 41 L. R. A. (N. S.) 564; 9 R. C. L. 475.

*Tucker & Tucker*, for appellant.

*D. C. Bramlette,* for appellee.

PACK, J. This is a *habeas corpus* contest between Alexander M. Steele, the husband, and Mary Steele, the wife,

over the custody of their minor child, a girl five years of age.

The husband, a resident of Baton Rouge, Louisiana, filed his petition before the chancellor of Wilkinson county, this state, where the wife and child then resided.

The parties formerly lived together as husband and wife in Lousiana, but separated in August, 1927. The wife, upon the separation, left Louisiana, bringing the child with her, and took up her abode in Wilkinson county.

There was exhibited to the petition a decree of divorce rendered in Louisiana, the domicile of the husband, in which decree the permanent custody of the child was awarded to the husband. This decree was rendered in October, 1927, without personal service upon the wife, and there was no voluntary appearance. The ground charged for divorce was adultery, and was brought under a Louisiana statute, Merrick's Revised Civil Code (2 Ed.), which provides:

Article 139: That without a separation from bed and board a divorce can be granted where husband or wife may have been sentenced to an infamous punishment, or guilty of adultery.

Article 141: *"When the defendant is absent* or incapable of acting from any cause, an attorney shall be appointed to represent him, against whom, contradictorily, the suit shall be prosecuted.

Act 296 of 1910, provides for appointment of curator *ad hoc* in suits for separation from bed and board and divorce.

Article 157: ". . . In all cases of divorce, the minor children shall be placed under the tutorship of that party who shall have obtained the divorce."

Pursuant to the statute an attorney of Baton Rouge, La., was appointed curator *ad hoc* to the defendant. The wife responded to the *habeas corpus* petition under oath,

in which she denied all charges of infidelity, and averred that she had no notice or knowledge of the filing or pendency of said divorce suit, and that said decree was illegal and void because of the want of jurisdiction of the Louisiana court to award the custody of said child. The answer further sets forth the reasons why she, rather than appellant, should have the custody of the child. Among other things, she alleges that on account of neglect of petitioner, and his denial of necessities to respondent and the child, and his "insane and' groundless charges" against her, she was forced to return to her former home in Wilkinson county, where she had resided with her father on a farm since the separation.

The chancellor, upon a full hearing, ordered that the petition be dismissed, and adjudged and decreed that the custody of the child be awarded to the mother, "with the privilege of the father, A. M. Steele, to visit said child at reasonable intervals."

Appellant insists that the decree of the Louisiana court is conclusive; that, under our Federal Constitution, article 4, section 1, "full faith and credit" must be given to this decree.

It is a well-established rule that when the full faith and credit clause of the Constitution is invoked to compel enforcement of a judgment or decree in another state, the question of the jurisdiction of the court of rendition is always open to inquiry. *Haddock* v. *Haddock,* 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1.; *National Exchange Bank* v. *Wiley,* 195 U. S. 259, 25 S. Ct. 70, 49 L. Ed. 184; *German Savings & Loan Association* v. *Dormitzer et al.,* 192 U. S. 125, 24 S. Ct. 221, 48 L. Ed. 373.

Since neither the mother nor the child, at the time of the decree of divorce, were within the jurisdiction of the Louisiana court, was the chancellor precluded from determining the custody of this child?

In *Seeley* v. *Seeley*, 30 App. D. C. 191, 12 Ann. Cas. 1058, the court of appeals of the District of Columbia held:

"The single question in this case is whether such a decree precludes the court below from determining the custody of this child, who was within this jurisdiction when the proceedings for a divorce were instituted in Chicago, and who has remained in this jurisdiction ever since. We are of opinion the Chicago court was without power to pass a decree preventing the court below from deciding concerning the custody and care of this infant, all the while physically within its own jurisdiction. The welfare of infants is a matter of paramount consideration at all times and under all circumstances. Courts of competent jurisdiction will always extend their arms to protect infants. The interest of infants is even paramount to the claim of both parents. This is the predominant question to be considered by the tribunal before whom the infant is brought. The rights of the parents must in all cases yield to the interest and welfare of the infant. No certain rule can be laid down, but the courts must hold the best interests of the children as of primary importance."

In *Kline* v. *Kline*, 57 Iowa, 386, 10 N. W. 825, 42 Am. Rep. 47, the supreme court of Iowa held:

"We think it logically follows, that where the minor children are nonresidents of the state where the divorce proceedings are had, the court acquires no jurisdiction as to their custody, simply because the decree can have no extra-territorial force or effect. In Cooley's Const. Lim., p. 404, it is said: 'The publication which is permitted by the statute is sufficient to justify a decree in these cases changing the *status* of the complaining party, and thereby terminating the marriage, and it might be sufficient also to empower the court to pass upon the question of the custody of the children of the marriage, if

ey were within the jurisdiction; if they acquire a dom-
e in another state or country, the judicial tribunals
of that state or country would have authority to deter-
mine the question of their guardianship there.'

"In *Woodworth* v. *Spring*, 4 Allen [Mass.] 321, it is
said: 'Every sovereignty exercises the right of deter-
mining the status or condition of persons found within
its jurisdiction. The laws of a foreign state cannot be
permitted to intervene to affect the personal rights or
privileges even of their own citizens, while they are re-
siding on the territory and within the jurisdiction of an
independent government. . . . The question whether
a person within the jurisdiction of a state can be re-
moved therefrom depends, not on the laws of the place
whence he came, or in which he may have had his domi-
cile, but on his rights or obligations as they are fixed and
determined by the law of the state or country in which he
is found.' "

It is our conclusion that a decree for divorce rendered
in another state awarding the custody of children, when
neither defendant nor children were within the jurisdic-
tion of such court, is of no effect so far as it pertains to
the awarding of the children. *Harris* v. *Harris*, 115 N.
C. 587, 20 S. E. 187, 44 Am. St. Rep. 471; *De la Montanya*
v. *De la Montanya*, 112 Cal. 101, 44 P. 345, 32 L. R. A.
82, 53 Am. St. Rep. 165; *Rodgers et al.* v. *Rodgers et al.*,
56 Kan. 483, 43 P. 779.

Touching the custody of the child, we think the case
stood before the chancellor as if there had been no form-
er decree and the matter was before him to be deter-
mined as to what would be for the best interests of the
child. In such cases this is always the paramount in-
quiry. *Haynie* v. *Hudgins*, 122 Miss. 838, 85 So. 99. The
chancellor had the parties and all the facts before him.
Broad latitude was given at the hearing. The mother

is not shown to be wholly unworthy. She stoutly denies guilt of adultery. Appellant himself, on being asked about this charge, said:

"Q. Isn't it true that she was charged with disorderly conduct or playing in the park? A. Disorderly conduct was what she was charged with.

"Q. That was all, wasn't it? A. That is all."

As usual in such cases, there were charges and counter charges, but we think it safer to uphold the finding of the chancellor on the facts. The child is of young and tender age needing the attention of its mother. The father is given permission to visit the child at all reasonable intervals.

The decree of the learned chancellor is affirmed.

*Affirmed.*