McAdams *v.* McFerron *et ux.*

(Division B. Jan. 24, 1938.)

[178 So. 333. No. 33003.]

Roberts & Smith, of Cleveland, and **Wm. L. Allan**, of Memphis, Tenn., for appellant.

646

Richard Denman, of Greenwood, and **J. J. Breland, R. L. Cannon**, and **L. Q. Strong**, all of Sumner, for appellees.

**Anderson, J.,** delivered the opinion of the court.

Appellant brought habeas corpus proceeding in the chancery court of Tallahatchie county against appellees to recover the custody of his son, Truman McAdams, appellees being the child's maternal grandparents and having his custody. The cause was heard on petition for the writ, answer, and proofs, resulting in a decree denying the prayer of the petition.

Appellant married a daughter of the appellees. At the time they all resided in Tallahatchie county in this state, and continued so to do until shortly after June 25, 1926; on that date a son was born, who was named Truman McAdams, the subject of the controversy here. Shortly after the birth of the child appellant left the state and became a resident of Memphis, Tenn., and has so continued since. A short time after he left the state his wife left and became a resident of Memphis, Tenn.; however, they have never lived together as man and wife since leaving this state. In 1930 the wife obtained a divorce from appellant in the circuit court of Shelby County, Tenn., of which Memphis is the county seat. In the decree the maternal grandparents, appellees, were awarded the custody of the child. The decree, however, expressly left open the further custody of the child as might appear to the court to be to his best interest. The mother of the child remarried, the father never has. Before leaving the state, the father and mother turned the child over to appellees, and the evidence tended to show that they agreed with appellees that they would never disturb their custody of him. In 1935 the child was in ill health, his father took him to Memphis for treatment. He refused to allow the child to return to his grandparents, the grandfather went to Memphis and took him

by force and brought him back to his home in Tallahatchie county.

In the spring of 1935 and in January, 1936, appellant had the Shelby county circuit court amend the decree touching the custody of the child so as to award it to him during the school months and to the grandparents during the vacation of the school. The grandparents were not parties to the Memphis court proceeding. At the time of the trial of this cause in the chancery court the child was between nine and ten years old.

Appellant contends that he never abandoned his son, and therefore under the law is entitled to his custody, and that the decree of the Shelby county court awarding him the custody of the child is binding on the courts of this state under the full faith and credit clause of the Federal Constitution, article 4, section 1.

We think the evidence, although conflicting, was sufficient to sustain the chancellor's finding of facts, as well as of law. The findings are embodied in an opinion in the record as follows:

"Wm. Hugh McAdams and Birdie Mae McFerron were married in Tallahatchie County. Truman was born to them there. Within a few days after the birth of the said child Wm. Hugh McAdams carried both the mother and child to the home of Chas. and Myrtle McFerron— father and mother of Mrs. McAdams—and grandparents of Truman McAdams, went to Memphis and obtained work and has never lived in Tallahatchie County or the State of Mississippi since. Thereafter Mrs. McAdams went to Memphis and obtained work. Likewise she has never lived in Tallahatchie County or Mississippi since. Truman was left by his father and mother with the McFerrons where he has continuously lived since his birth and for a period of approximately ten years.

"Subsequent to the removal of McAdams and his wife to Memphis, Tenn., divorce proceedings were had by and between the said McAdams and his wife in Tennessee and the Tennessee Court undertook to award the cus-

tody of Truman to the McFerrons, although Truman was not then, nor has he since ever been, a resident of the State of Tennessee.

"This court, after hearing testimony in this cause at two trials, is of the opinion that any and all orders and proceedings had by the Tennessee courts touching the 'care and custody' of the minor, Truman McAdams, are void for the reason the said Tennessee court never had jurisdiction of the person of said minor.

"The only other question presented by the record is: 'Do the facts as disclosed by the record prove that Mc-Adams has abandoned the said Truman McAdams?' The general rule in determining this question is: 'The welfare of the minor is a matter of paramount consideration.' It is, as said by some courts, the Pole Star.

"When Truman was a mere babe he was left with the McFerrons with the promise by McAdams that he would never disturb that custody; likewise the mother made the same provision. Thereafter, through the years, the McFerrons, with this assumption that they would never be disturbed in their care, nurture and custody of Truman, did take the child when but a babe, a few days old, nursed, cared for it as only a devoted father and mother could. During these years McAdams lived in Memphis, drew a good salary, and the weight of the evidence discloses that he seldom came to Tallahatchie County; never evinced any special affection for Truman or spent any of his salary towards the boy's care or attention or spent any of his time with his child, nor did he contribute anything towards his support, and, so far as the weight of the evidence shows, he never bestowed any attention, affection or fatherly assistance on the boy.

"It is undisputed that the McFerrons are good people, though in moderate circumstances, and are fit and suitable persons to have the care and custody of the child. That through these years a warm, deep and affectionate attachment, such as exists between parent and child, has been formed between Truman and his grandparents, and

both Truman and the grandparents desire to remain together in the ties of affection which time has made permanent and binding. With these facts before me this court will not separate this child from its grandparents. To do so would not only be cruel and unjust but it would be contrary to the law in Mississippi.

"See Morgan v. Shelly, 111 Miss. 868, 72 So. 700.

"It is, therefore, the opinion of the Court that the great weight of the testimony discloses that McAdams has abandoned his child to that extent that the best interests and the permanent welfare of Truman will best be served by leaving him in the care and custody of the McFerrons."

In the Morgan-Shelly Case the court held that it would be presumed to be for the best interest of the child to be with its father unless his unfitness or abandonment of the child be shown; that, where the father was unfit to rear the child or had abandoned it when only a few days old, he could not after twelve years of desertion invoke the aid of the courts to restore its custody to him, where during that period it had been reared by foster parents and had become by attachment their own child.

Appellant, as well as appellees, relies on section 216 of Amis on Divorce and Separation in Mississippi, which we think correctly states the governing principles of law. That section is in this language: "A careful study of the reported cases shows that where a parent, without just cause or excuse, forsakes or deserts his or her infant child, for such a length of time, and under such circumstances, as to show an intent to shirk or evade the duty, trouble or expense of rearing it, or a callous indifference to its wants, or a reckless disregard of its welfare, he or she is guilty of such an abandonment of it as to bar his or her right to thereafter reclaim its custody from any person who may have ministered to and protected it during such period of desertion. McShan v. McShan, 56 Miss. 413; Fullilove v. Banks, 62 Miss. 11; Morgan v. Shelly, 111 Miss. 868, 72 So. 700. Such con-

duct conclusively rebuts and overthrows the legal presumption that the welfare of the child would, other things being equal, be best served by the custody and control of the parent. Having once deserted the child there is no guaranty that such a parent might not in the future be guilty of some other equally atrocious conduct toward it. But if a parent, out of regard for the feelings or affections of kindred, or for purposes of education or training, or for any other just and reasonable cause, permits or allows a child to remain in the custody of another person, under such circumstances as to show that he or she did not intend to sever the relation of parent and child, or to shirk or evade the duty of rearing and maintaining it, and was not callous or indifferent as to its welfare, then such conduct does not bar his or her right to reclaim its custody, even though during such time the affections of the child and the custodian for each other may have grown to be very great. In such a case the affections of the custodian can not outweigh the right of the parent, if otherwise suitable to have the custody. Hibbette v. Baines, 78 Miss. 695, 29 So. 80, 51 L. R. A. 839; Nickle v. Burnett, 122 Miss. 56, 84 So. 138.''

The chancellor found that appellant's conduct came within the principle first stated in that section.

The full faith and credit clause of the Federal Constitution has no application to the judgment of a court of another state which has no jurisdiction. The question of jurisdiction of a foreign court is always open to inquiry. Huntington v. Attrill, 146 U. S. 657, 685, 13 S. Ct. 224, 36 L. Ed. 1123; Thormann v. Frame, 176 U. S. 350, 356, 20 S. Ct. 446, 44 L. Ed. 500; Bell v. Bell, 181 U. S. 175, 21 S. Ct. 551, 45 L. Ed. 804; Streitwolf v. Streitwolf, 181 U. S. 179, 21 S. Ct. 553, 45 L. Ed. 807; Steele v. Steele, 152 Miss. 365, 118 So. 721; Woodville v. Pizzati, 19 Miss. 442, 81 So. 127; Miller v. Ewing, 8 Smedes & M. 421, 16 Miss. 421. The child was never domiciled in Tennessee; it never had any situs there; its domicile was always in Mississippi. The Shelby coun-

ty court was therefore without jurisdiction to award its custody to appellant.

· Affirmed.