123 So.2d 382 (1960)
Madeline BROWN, Appellant,
v.
W. Norman BROWN, Appellee.
No. 1744.
District Court of Appeal of Florida. Second District.
September 30, 1960.
Jose A. Gonzalez, Jr., of Watson, Hubert & Sousley, Ford Lauderdale, for appellant.
No appearance for appellee.
SHANNON, Judge.
This is an appeal by the appellant, the plaintiff below, from a final decree in a divorce action, where the complaint was dismissed without prejudice on the ground that the wife did not meet the residence requirements of Fla. Stat. § 65.02, F.S.A.
The husband and wife were formerly residents of Maryland. In February, 1959, *383 the husband came to Florida with the understanding with his wife that she would remain behind intending to come to Florida and join him as soon as their son had completed his school year. She actually came to Florida and joined her husband in June. After she came to Florida the parties came to a disagreement which resulted in the wife suing for divorce in October. When the cause came before the chancellor for final decree, ex parte, it was held by the chancellor that the wife having been in the State of Florida for only four months, did not meet the residence requirements of the Florida statutes.
Florida Statute, § 65.02, F.S.A. reads as follows:
"Residence required.  In order to obtain a divorce the complainant must have resided six months in the state before the filing of the bill of complaint, but shall not affect any suit for divorce filed prior to October 1, 1957."
We are unable to find that this exact question has been before the Florida Supreme Court, although there are many cases where the principles have been announced.
Technically, there is a distinction between the jurisdiction requirements, which allow a court of equity to decide a divorce case, and the residence requirement of six months, which the Legislature has imposed. "Residence" in a divorce case undoubtedly implies "domicile." In a general sense, these terms may be interchangeable. However, in the case at bar the technical difference becomes important, as pointed out in 17 Am.Jur., Divorce, § 282:
"§ 282. Length of Residence; Statutory "Waiting Period."  In so far as the power to confer jurisdiction of the res or marriage status for the purpose of granting a divorce is concerned, the important factor is the existence of a domicil rather than the length of the residence. The state may authorize the granting of a divorce if the plaintiff has established a domicil within the state even for a day. On the other hand, the states have the power to superimpose upon the fact of domicil or residence within the state a requirement that the domicil or residence continue for a certain period of time as a prerequisite to a divorce; and the legislatures have exercised this power by prescribing a "waiting period" of from 6 weeks to 5 years. The statutory period of residence must ordinarily elapse prior to the commencement of the action, in order for the plaintiff to obtain a decree of divorce, * * *"
The principle of law stated above indicates that the six months residence requirement imposed by Florida Statute, § 65.02, F.S.A. adds an additional phase to "domicile."
Perhaps the clearest way to point out this technical distinction is by the proof required to establish each item. The domicile involves the intent of an individual. The residence is a matter of objective fact. Many states have worded their statutes so that a divorce plaintiff must have "continuously resided" for a specific period of time before being allowed to bring suit. This is true in Arizona, Connecticut, Nevada, North Carolina, Ohio and Virginia, and possibly other jurisdictions. Typical of the holdings where a state has a "continuously resided" type of statute is Carnahan v. Carnahan, 79 Ariz. 371, 290 P.2d 729, 730, 55 A.L.R.2d 1258, where the court said in part:
"This court with unanimity has consistently held:
"`Under the statute, it is absolutely essential before a person may lawfully file a complaint for a divorce that he shall have been an actual bona fide resident of the state for one year and of the county six months. * * *'"
According to the Supreme Court of Mississippi, this is also valid in Florida. In the full faith and credit case of Anglin v. *384 Anglin, 1951, 211 Miss. 405, 51 So.2d 781, the husband and wife lived in Mississippi. When they separated, the husband went to Florida, and, having met the jurisdictional requirements, he subsequently obtained a divorce in this state. The wife sued for divorce in Mississippi and the husband raised his Florida decree as a bar to that action. After investigating the jurisdiction of the Florida court, the Supreme Court of Mississippi gave full faith and credit to our decree, saying at page 782 of 51 So.2d:
"* * * Bona fide residence in Florida by a complainant in a divorce action for a period of ninety days next preceding the filing of suit was, under the law of that state, a statutory prerequisite to jurisdiction, and appellee's bill alleged that he had been a bona fide resident of Orange County, Florida, for more than ninety days next preceding the filing of his bill. * * *"
In the present case the question we have is  Does the maxim that a wife's domicile is that of her husband's establish constructive residence under Florida Statute, § 65.02, F.S.A.? The following factors appear to be important:
1. The maxim applies to domicile, and as noted above, domicile and residence are technically distinct.
2. There is no question that the maxim applies to shift the domicile and that the wife became a domiciliary of Florida when her husband moved here. However, this raises the question as to the resident requirements of our statute.
3. Our Supreme Court has expressly stated that actual residence is required for a divorce action. See Campbell v. Campbell, Fla. 1953, 57 So.2d 34.
4. Our Supreme Court has also equated the terms "domicile" and "residence" in Herron v. Passailaigue, 92 Fla. 818, 110 So. 539.
There are a great many cases decided at trial court level and which are not reported in the West system and the actual opinions are not available to us. However, in an annotation in 39 A.L.R. 719, the following cases are reported to hold that the maxim of a wife's domicile being the same as her husband's does not suffice to satisfy the statutory time requirements: Starr v. Starr, 78 Pa.Super. 579; Schonwald v. Schonwald, 55 N.C. 367, and Dutcher v. Dutcher, 39 Wis. 651. A directly contrary result, however, can reportedly be found in Ashbaugh v. Ashbaugh, 17 Ill. 476, and Kashaw v. Kashaw, 3 Cal. 312.
The question of a married woman's domicile arises in many contexts other than divorce. The solutions in these areas have been helpful by way of analogy in determining the question in the present case.
In Minick v. Minick, 1933, 111 Fla. 469, 149 So. 483, 487, the Florida Supreme Court passed upon the validity of constructive service in a divorce action where a wife had deserted her husband in Florida. Justice Brown, in writing his opinion for the Court, says in part:
"Perhaps the interpretation of no words used in legal phraseology has given the courts of this country more labor and difficulty, and has resulted in a greater variety of judicial opinion, than the interpretation of the words `domicile' and `residence.' Undoubtedly, much of the apparent variety and inconsistency in the decisions is due to the fact that the words `resident' and `residence,' and `nonresident,' as well as the word `domicile,' are evidently used in a different sense in some statutes from that in which they are used in other statutes relating to different subjects. We will make no attempt to review or reconcile the various decisions on this subject. Our own decisions appear to be fairly consistent as to those phases of the subject with which we have had to deal thus far in this jurisdiction.
* * * * * *
"* * * This thought is illustrated by the present case. Technically, the *385 domicile of the defendant wife continued to be, in the eye of the law, that of the husband, but her residence, within the meaning of the constructive service statute, might well have been at some other place, as alleged in the bill. * * *"
In the field of taxation in Commonwealth of Virginia v. Rutherfoord, 1933, 160 Va. 524, 169 S.E. 909, 90 A.L.R. 348, the question before the court was whether or not the State of Virginia could impose a residency tax on the separate property of a woman, solely on the ground that she had married a Virginia man and that Virginia was therefore her home. Prior to the marriage the wife had been a well established New York resident and after her marriage she continued to pay New York taxes. There was no friction between the husband and wife and the wife claimed exemption from the Virginia tax on the grounds of out of state residence. The Virginia court held for the wife and criticized rigid adherence to a common law fiction that a married woman's domicile shifts when the facts are obviously contrary. In 90 A.L.R. 359, the author makes the following observation:
"* * * By this, however, is not meant that the rule that the husband determines the domicil of the family, and that the domicil of the wife follows that of her husband, will in time be abolished; but that that rule will be subordinated to conditions to the contrary, and that it will be applied only when, in the surrounding circumstances, there is nothing to indicate that the wife maintained an independent domicil for herself, whether under hostile or amicable relations with her husband."
There is another field of law in which we have the same principle involved, and this is where a non-resident widow makes a claim for a statutory allowance in the state where her husband was domiciled at the time of his death. The majority rule will allow the widow her statutory amount, but even here there is a conflict among the decisions, as will appear from 26 A.L.R. 132.
We believe that under the facts in this case, the wife has failed to prove the six months residential requirement, as provided for in Florida Statute, § 65.02, F.S.A., and that the chancellor was correct in dismissing her complaint.
Affirmed.
ALLEN, C.J., and KANNER, J., concur.